#4

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

DANIEL LIEB,                          )      Civil Action No.: 2:23-cv-409
                                      )
                  Plaintiff,          )
                                      )
        vs.                           )
                                      )      B177
ALLEGHENY COUNTY,                     )
                                      )              FILED
and                                   )              MAR 10 2023
                                      )      CLERK U.S. DISTRICT COURT
RICH FITZGERALD,                      )      WEST. DIST. OF PENNSYLVANIA
In his official capacity as           )
Allegheny County Executive,           )
                                      )      **JURY TRIAL DEMANDED**
                  Defendants.         )
                                      )
                                      )
                                      )
_____        )

## COMPLAINT

Plaintiff Daniel Lieb, proceeding pro se, hereby files the following complaint:

## PARTIES

1. Plaintiff Daniel Lieb (hereafter "Lieb" or "Plaintiff") is an individual and citizen of the Commonwealth of Pennsylvania. He resides at 1121 Schang Road, Pittsburgh, PA 15236.

2. Allegheny County is a municipal entity of the Commonwealth of Pennsylvania. The Allegheny County Solicitor represents the county in all legal proceedings, and

accepts legal notices. The Solicitor's address is 445 Fort Pitt Boulevard, Suite 300, Pittsburgh, PA 15219.

3.  Rich Fitzgerald is the Allegheny County Executive, the top elected official of the county's executive branch. He is represented, in his official capacity, by the county solicitor, and thus served at 445 Fort Pitt Boulevard, Suite 300, Pittsburgh, PA 15219.

4.  Defendants hereafter will be referred to as "Fitzgerald," "Allegheny County," and/or collectively "Defendants."

5.  All of the events set forth herein took place in Allegheny County, Commonwealth of Pennsylvania.

## JURISDICTION AND VENUE

6.  The original jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331, as the claims are substantively based on Title VII, 42 U.S.C. § 2000e *et seq*. Supplemental jurisdiction is also invoked pursuant to 28 U.S.C. § 1367 and, subsequently, 28 U.S.C. § 2201.

7.  Venue is appropriate in the Western District of Pennsylvania pursuant to 42 U.S.C. § 2000e-5(f)(3), as both Allegheny County, the office of Rich Fitzgerald, and the Plaintiff are all located in this judicial district.

## PLAINTIFF DAN LIEB

8.  Plaintiff was hired by the Allegheny County Bureau of Corrections on January 8, 2007. There were no vaccination requirements required as conditions of employment,

based on a collective bargaining agreement. Plaintiff worked primarily in housing units before moving to the Supply Department.

9.   Plaintiff's duties were integral to the overall operations of the corrections system, particularly related to distribution of hygiene products, sanitation and orderly functions of the facilities. Plaintiff was employed by Allegheny County for 15 years, and had only two minor disciplinary infractions in that entire span (2008 and 2017). Plaintiff planned to retire with the county.

## **VACCINE MANDATE BASED ON FEAR, FALSE PRETENSES, FANATICISM, AND ASSUMPTIONS, NOT FACTS AND SCIENCE**

10.   Defendant Fitzgerald is the county's top elected official. He's held the position since 2012, and will leave due to term limits in January 2024.

11.   Fitzgerald has a personal affinity, perhaps even an obsession with the COVID-19 vaccines. He not only participated in clinical trials for Moderna COVID-19 vaccines at the University of Pittsburgh prior to the COVID-19 vaccines receiving emergency use authorization from the U.S. Food and Drug Administration ("FDA") in December 2020, but he also frequently promoted the injections via his social media channels. **See Exhibit A - Fitzgerald social media posts**.

12.   Fitzgerald announced in March 2021 that he began offering $100 bribe-like payments to any/all Allegheny County employees who voluntarily received the COVID-19 vaccines. **See Exhibit B - Fitzgerald $100 payments**. Fitzgerald admitted in the same August 10, 2021 article (Exhibit B) that collective bargaining issues will make

it difficult to mandate COVID-19 vaccines for current Allegheny County employees, as he had for all new employees. Defendants also failed to address the growing data on safety issues with the vaccines at that time.

13.   The FDA, in a joint statement with the U.S. Centers for Disease Control and Prevention ("CDC") announced on April 13, 2021 that the Johnson & Johnson ("J&J") viral vector DNA COVID-19 vaccines were paused indefinitely due to a "severe type of blood clot in individuals after receiving" the shots. **See Exhibit C - FDA and CDC Joint Statement.** Said statement came less than six weeks after the FDA authorized the J&J shots for emergency use in the United States.

14.   That same month (April 2021), the CDC published a press release stating that there was an observable, positive correlation between heart inflammation (myocarditis and pericarditis) and the Pfizer and Moderna mRNA COVID-19 vaccines. **See Exhibit D - CDC myocarditis warning April 2021**.

15.   Fitzgerald also failed to address the fact that the COVID-19 vaccines do not stop the spread of COVID-19. The CDC published a study on July 30, 2021, chronicling a COVID-19 outbreak in Barnstable County, Massachusetts. Of the 469 COVID-19 cases identified in the area, 346, or 74%, were fully vaccinated individuals. **See Exhibit E - CDC Barnstable County study July 2021**. Thus the COVID-19 vaccines did not prevent vaccinated individuals from contracting COVID-19.

17.   Dr. Anthony Fauci, the former director of the National Institute of Allergy and Infectious Diseases, co-authored a paper published in the peer-reviewed scientific journal *Cell Host & Microbe* on January 11, 2023 entitled "Rethinking next-generation vaccines for coronaviruses, influenzaviruses, and other respiratory viruses." **See**

**Exhibit F - Fauci 2023 Rethinking Study**. It provided further clarification as to what we already knew from the July 2021 CDC study - that the COVID-19 vaccines do not stop the spread of COVID-19. Among the paper's conclusions are the following (Page 1 and Page 8):

> *"[Coronaviruses] generally do not elicit complete and durable protective immunity by themselves, they have not to date been effectively controlled by licensed or experimental vaccines. Durably protective vaccines against non-systemic mucosal respiratory viruses with high mortality rates have thus far eluded vaccine development efforts.*
>
> *Past unsuccessful attempts to elicit solid protection against mucosal respiratory viruses and to control the deadly outbreaks and pandemics they cause have been a scientific and public health failure that must be urgently addressed."*

18.   Despite all of the foregoing safety issues and evidence that the COVID-19 vaccines do not stop person-to-person transmission of the SARS-CoV-2 virus, the FDA approved the biologics license application (BLA) for the Pfizer Comirnaty mRNA vaccines on August 23, 2021. However, the FDA conceded that the BLA Pfizer Comirnaty injections and the emergency use authorized Pfizer BioNTech COVID-19 vaccines are "legally distinct," thus different products. **See Exhibit G, page 2 (Pfizer BLA)**.

19.   Further, Pfizer said in a statement to the CDC that Comirnaty-branded vaccines "will not be manufactured" and that "Comirnaty products are not orderable at this time (November 2021)."[1] Thus there is and never was a "fully approved" FDA vaccine for COVID-19 in the U.S. despite a fallacious, widely-disseminate narrative saying otherwise.

---

[1] These data are contained on the Centers for Disease Control website on pages entitle "COVID-19 Vaccine Related Codes." Said pages are very long, very bulky charts that are difficult to print as exhibits. Plaintiff will submit electronic links to said pages in due course.

20.   Defendants emailed all Allegheny County employees a memo on August 6, 2021. It said, *inter alia*, "Effective Monday, August 9, 2021, all Allegheny County employees must get a COVID-19 vaccination or be subject to a mask requirement and regular COVID-19 testing." The memo also stated that religious and medical exemptions will be allowed "in accordance with state and federal law." See **Exhibit H (August 6, 2021 memo)**. All employees were given a deadline of December 1, 2021 to receive the injections, or be terminated from their positions.

21.   Plaintiff, despite being highly uncomfortable discussing his spirituality and personal relationship with God in a work setting, submitted his request for an exemption from the COVID-19 vaccines due to his sincerely-held religious beliefs to Employee Relations Manager Nichole Nagle on October 12, 2021. **See Exhibit I (Religious Exemption Request)**. A supplemental memorandum to the religious exemption request was submitted on October 13, 2021. **See Exhibit J (Supplemental Brief - Religious Exemption)**.

22.   Plaintiff reasonably expressed his concerns about safety issues with the COVID-19 vaccines. He also expressed his willingness to undergo weekly COVID-19 testing, which is a stated reasonable accommodation for religious exemptions in the August 6, 2021 memo. The foregoing accommodations were also the same accommodations utilized throughout 2020 when corrections officers continued working during the height of the pandemic as "essential workers."

23.   Plaintiff cited many reasons as to why the mRNA injections violate his sincerely-held religious beliefs, primarily due to his body being a Temple of God, and that both the mRNA and viral vector DNA injections are "foreign bodies being inserted into my body."

24.   All of the COVID-19 vaccines were derived from research and development processes that included aborted human fetal cells. According to a July 2020 *Science* magazine article:

> "At least five of the candidate COVID-19 vaccines use one of two human fetal cell lines: HEK-293, a kidney cell line widely used in research and industry that comes from a fetus aborted in about 1972; and PER.C6, a proprietary cell line owned by Janssen, a subsidiary of Johnson & Johnson, developed from retinal cells from an 18-week-old fetus aborted in 1985."

**See Exhibit K - June 2020 *Science* magazine.**

25.   Another article published by the University of Nebraska Medical Center on December 28, 2020 further affirmed the use of aborted human fetal cells in the R&D stages of developing the mRNA and viral vector DNA injections:

> "[Pfizer and Moderna] used the fetal cell line HEK 293 in the confirmation phase to ensure the vaccines work. All HEK 293 cells are descended from tissue taken from a 1973 elective abortion that took place in the Netherlands."

**See Exhibit L - Nebraska Medicine December 2020.**

26.   Abortions are abhorrent, detestable infringements on all Biblical Christianity.

- "Now the word of the Lord came to me, saying, 'Before I formed you in the womb, I knew you, and before you were born, I consecrated you; I appointed you a prophet to the nations." See Jeremiah 1:4-5.

- "The Lord called me from the womb, from the body of my mother he named my name." See Isaiah 49:1b

- "For you created my inmost being; you knit me together in my mother's womb." Psalms 139:13

27.   Moderna, in its June 30, 2020 Form 10-Q Report filed with the U.S. Securities and Exchanges Commission, specifically stated, "Currently, mRNA is considered a gene therapy product by the FDA." **See Exhibit M (Moderna 10-Q)**. Human genes, meaning

RNA and DNA, are the most basic physical and functional units of our being. God created us all in his own perfect likeness.

- "When God created mankind, he made them in the likeness of God. He created them male and female and blessed them. And he named them 'Mankind' when they were created." See Genesis 5:1-3.

- "Then God said, "Let us make mankind in our image, in our likeness, so that they may rule over the fish in the sea and the birds in the sky, over the livestock and all the wild animals, and over all the creatures that move along the ground." See Genesis 1:26.

28.   Gene therapy, as Moderna calls its vaccines, alters your very genetic code, thus alters the perfect creation of God. It is abominable for the Plaintiff to even fathom injecting fetal-cell-derived materials and chemicals that change God's perfect creation into his body.

29.   Plaintiff received a letter from Allegheny County Human Resources Director Laura Zaspel via USPS on November 29, 2021. The letter is dated November 24, 2021. The letter stated that the county has "decided to deny your request to be exempted from the COVID-19 vaccination requirement." Defendants cited "workplace safety, safety of members of public, infringement on other employee's job rights, etc." **See Exhibit N - Denial of Religious Exemption**.

30.   The denial letter is a form/template letter sent to all Allegheny County employees who requested religious exemptions. All Allegheny County employees who requested religious exemptions from the COVID-19 vaccines, as of November 4, 2022, were denied with the exact same denial letter. **See Exhibit O (Nosbisch R-T-K response)**.

31.   Plaintiff emailed Zaspel, Nagle, and others, requesting to appeal the decision that same day. The request was ignored.

32.   Pursuant to *Cleveland Board of Education v. Loudermill*, 470 U.S. 532 (1985), the Plaintiff, as a public employee, had a "Loudermill hearing" on December 1, 2021, which was only two days after the Plaintiff received the letter denying his religious exemption request.

33.   The Plaintiff, Union Representative Charles Claypool, Hearing Officer Dwight Edwards, and Deputy Warden Laura Williams were present for the hearing.

34.   Plaintiff, at the hearing, requested a 30-day grace or extension period to evaluate the situation further. He also requested proof from the county that granting his religious exemption request would, among other things, "impair workplace safety."

35.   Defendants stated two "assumptions" in response: 1) that they "*assumed*" that the CDC had specific recommendations to fire unvaccinated corrections officers and 2) they "*assumed*" that unvaccinated persons are at higher risk of contraction and transmission of COVID-19. Thus the Defendants provided zero evidence of CDC recommendations to terminate unvaccinated corrections officers, and admitted that the vaccine mandate was implemented based on "assumptions." **See Exhibit P - Loudermill transcript**.

35.   The Defendants second assumption is directly contradicted by the CDC's own research. See Exhibit E, *supra*. Williams stated at the hearing that simply being in the room with the Plaintiff placed her at risk, but she did not evaluate as to what said risk was.

36.   Less than 24 hours later, on December 2, 2021, the Defendants terminated the Plaintiff's employment, effective immediately. **See Exhibit Q - Termination Letter**.

37.   Plaintiff, after hearing of several unvaccinated employees still working for the county after December 1, 2021, emailed Nagle, Zaspel, et al. on December 13, 2021.

Attached to said email was a copy of a lab report from North Carolina-based LabCorp, the largest clinical laboratory in the world.

38.   Said report concluded that the Plaintiff's blood contained natural antibodies (immunity) to COVID-19. **See Exhibit R - Lieb natural immunity**.

39.   At least 100 peer-reviewed studies had been published prior to December 2021 concluding that natural immunity to COVID-19 was just as or even more effective than vaccine-induced immunity.

40.   More recently, a meta-analysis published in *The Lancet* on February 16, 2023 analyzed 65 of said natural immunity studies from 19 countries. Researchers concluded that natural immunity to COVID-19 was just as effective and, in some cases, more effective than vaccine-induced immunity. **See Exhibit S - Lancet study**.

41.   Despite all the foregoing, the Defendants never contacted the Plaintiff thereafter.

## EEOC AND STATUTE OF LIMITATION

42.   Plaintiff commenced a timely religious discrimination complaint against the Defendants via the U.S. Equal Employment Opportunity Commission (EEOC). The EEOC denied relief and issued a right-to-sue letter dated November 15, 2022. However, the Plaintiff did not receive the letter from the EEOC until December 12, 2022 when he requested a status update on his case via email. **See Exhibit T (Damon Johnson EEOC email)**.

43.   The letter states that the Plaintiff has 90 days "of your receipt of this letter" to file a lawsuit in federal court. The actual date of a letter's receipt controls the tolling time for the statute of limitation. See *Burgh v. Borough Council of Borough of Montrose*, 251 F.3d 470 (3d Cir. 2001). Thus the Plaintiff has/had until March 12, 2023 to file the

lawsuit. But since March 12, 2023 is on a Sunday, the statute of limitation expires after the following business day, Monday, March 13, 2023. See Fed. R. Civ. P. 26(a)(3)(B).

## CLAIMS FOR RELIEF

### COUNT I - RELIGIOUS DISCRIMINATION (TITLE VII Violation)

44.   Plaintiff incorporates Paragraphs 1 to 43 as though set forth fully herein.

45.   Title VII compels U.S. employers to provide reasonable accommodations to workers who request exemptions from workplace policies based on sincerely-held religious beliefs.

46.   Defendants implemented a kangaroo, farcical administrative process with predetermined adverse outcomes for all religious exemption requests. Plaintiff received the same cookie-cutter denial letter as all others who requested religious exemptions for the COVID-19 vaccines.

47.   Defendants stated in the form denial letter that the Plaintiff was denied religious accommodations because of "workplace safety," "safety of members of the public," etc. But when asked to elaborate further on their evidence of workplace and public safety hazards, Defendants admitted that they came to these conclusions based on "assumptions."

48.   The U.S. Supreme Court, in upholding the permanent injunction on the Occupational Safety and Health Administration (OSHA) vaccine mandate for all employers with over 100 workers, wrote in January 2022 that OSHA may set workplace safety standards, but not broad public health measures. COVID-19 is not an occupational hazard because it spreads everywhere people gather. The Court held:

> *"That kind of universal risk is no different from the day-to-day dangers that all face from crime, air pollution, or any number of communicable diseases.*

*Permitting OSHA to regulate the hazards of daily life—simply because most Americans have jobs and face those same risks while on the clock—would significantly expand OSHA's regulatory authority without clear Congressional authorization."*

See *National Federation of Independent Business v. Department of Labor, Occupational Safety and Health Administration*, 595 U.S. ___ (2022).

49.   Defendants categorically refused to grant any reasonable accommodations, despite "essential workers" such as the Plaintiff, working throughout the pandemic from March 2020 to December 2020 (prior to vaccines) with the same accommodations the Plaintiff requested in his religious exemption from the vaccines (daily testing, masks, etc.).

50.   Upon information and belief, the Defendants denied all religious exemption requests with the same form denial letter.

## COUNT II - VIOLATIONS OF THE ALLEGHENY COUNTY HOME RULE CHARTER AND ADMINISTRATIVE CODE

51.   Plaintiff incorporates Paragraphs 1 to 50 as though set forth fully herein.

52.   The Allegheny County Home Rule Charter went into effect on January 1, 2000. It created the elected position of County Executive. Defendant Fitzgerald was sworn in as the third Allegheny County Executive on January 3, 2012.

53.   The Charter enumerates all powers and duties of the Chief Executive, including "approve or reject ordinances and resolutions passed by County Council" and "submit ordinances, resolutions and other related matters to County Council." See Article V § 1.5-502(d) and (f).

54.   The powers and duties of the Chief Executive are further defined in Allegheny County Administrative Code, Division 1, Chapter 5, Part 4, § 5-401.02, which reiterates veto power on proposed resolutions passed by County Council.

55.   Power is vested solely in the County Council to "adopt, amend and repeal ordinances, resolutions and motions not contrary to the requirements of this Charter or law" and to "adopt an Administrative Code." The Charter, Article IV, § 1.4-402(a) and (d).

56.   Defendant Fitzgerald unlawfully exceeded his authority by unilaterally, arbitrarily, and capriciously implementing a COVID-19 vaccine mandate for all Allegheny County employees without the input of the County Council.

57.   Defendants enforced the mandate based solely on Defendant Fitzgerald's personal, deep affinity and obsession with COVID-19 vaccines. There was no legal or scientific basis for Fitzgerald's vaccine mandate that led to the Plaintiff's termination from employment.

### COUNT III - NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

58.   Plaintiff incorporates Paragraphs 1 to 57 as though set forth fully herein.

59.   The Defendants had a common law, preexisting duty of care not only to protect the Plaintiff's sensitive private information, but also to protect him from unreasonable risks of harm.

60.   Defendant Fitzgerald unlawfully, unilaterally, arbitrarily, and capriciously implemented a COVID-19 vaccine mandate that forced the Plaintiff to make a choice between obeying his Lord and Savior Jesus Christ while also protecting his own health and well-being, versus submitting to the unlawful mandate to retain his 15-year career with the county.

*"No one can serve two masters. Either you will hate the one and love the other, or you will be devoted to the one and despise the other. You cannot serve both God and money." Matthew 6:24.*

61.   This entire ordeal, beginning in August 2021, has caused the Plaintiff severe emotional distress and anxiety, particularly in being forced to discuss personal, sincerely-held religious beliefs in the workplace.

62.   No human being really knows what the Beast or the Mark thereof are. The sheer wickedness is imponderable and something God solely has the power to identify and remedy. Plaintiff has prayed about the vaccines, and God, as merciful as He is, cannot and has not told the Plaintiff if the vaccines are the Mark of the Beast as outlined in the Book of Revelation.

> *"The second beast was given power to give breath to the image of the first beast so that the image could speak and cause all who refused to worship the image to be killed. It also forced all people, great and small, rich and poor, free and slave, to receive a mark on their right hands or on their foreheads, so that they could not buy or sell unless they had the mark, which is the name of the beast or the number of its name. This calls for wisdom. Let the person who has insight calculate the number of the beast, for it is the number of a man. That number is 666." See Revelation 13:15-18.*

63.   Sincerely-held religious beliefs "address [ ] fundamental and ultimate questions having to do with deep and imponderable matters...are 'comprehensive in nature,' and are accompanied by 'certain formal and external signs." See *Africa v. Commonwealth of Pennsylvania*, 662 F.2d at 1032 (1981).

64.   Plaintiff has suffered public humiliation, discrimination and ridicule as a result of the Defendants making his vaccination status public by unlawfully terminating his employment. Plaintiff has suffered severe clinical anxiety and depression as a result of the Defendants' actions.

## **PRAYER FOR RELIEF**

WHEREFORE, the Plaintiff respectfully prays this Honorable Court grants relief as follows:

A.  A declaratory judgment finding that Defendant Rich Fitzgerald unlawfully exceeded his statutory authority in implementing a countywide vaccine mandate for all employees.

B.  Compensatory damages, including but not limited to, lost wages, back pay, and interest; pecuniary and punitive damages.

C.  Award the Plaintiff costs related to commencing this action, including, but not limited to, filing fees, service fees, administrative fees, printing fees, etc.

D.  All such other relief under TitleVII, and all other relief as this Court deems fair and equitable.

Respectfully submitted on this 10th day of March, 2023.

_____

Daniel Lieb
1121 Schang Road
Pittsburgh, PA 15236
dan.lieb@yahoo.com
412-848-3491
Plaintiff - Pro Se